IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**CYNTHIA D. PAJAK,**

    **Plaintiff,**

v.                                              Civil Action No. 1:21-MC-27
                                                     (JUDGE KEELEY)

**UNDER ARMOUR, INC.,**
**UNDER ARMOUR RETAIL, INC.,**
**AND BRIAN BOUCHER,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING UNDER ARMOUR'S MOTION [ECF NO. 1] TO QUASH SUBPOENA OF NON-PARTY

This matter, a discovery dispute, relates to an underlying civil matter pending in this Court bearing Case No. 1:19-CV-160. The instant matter originally was pending in the United States District Court for the District of Minnesota. The matter was assigned to United States District Judge David S. Doty and United States Magistrate Judge Elizabeth Cowan Wright. [ECF No. 8]. By order dated June 7, 2021, Magistrate Judge Wright transferred the matter to this District. [ECF No. 25]. Thereafter, by order dated June 14, 2021, Senior United States District Judge Irene M. Keeley referred the matter to the undersigned Magistrate Judge. [ECF No. 27].

While the matter was pending in the United States District Court for the District of Minnesota, the matter was fully briefed. Thus, presently pending before the Court is Defendants Under Armour, Inc. and Under Armour Retail, Inc.'s ("Under Armour") Motion to Quash Subpoena of Non-Party [ECF No. 1], filed on May 13, 2021. The Court is in receipt of the memorandum of support, thereof [ECF No. 2], and a declaration in support, thereof [ECF No. 3], filed on even date therewith. Also, the Court is in receipt of Plaintiff's response in opposition,

1

thereto, [ECF No. 16], filed on May 27, 2021. Finally, the Court is in receipt of Under Armour's response [ECF No. 22] to Plaintiff's opposition, and a second declaration in support [ECF No. 23], thereof, filed on June 3, 2021. On June 30, 2021, the undersigned Magistrate Judge conducted a hearing on the subject motion, and took the parties' arguments under advisement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

By Order of March 8, 2021, Judge Keeley allowed Plaintiff to amend her Complaint in the underlying matter to add claims for intentional spoliation, and permitted further limited discovery on those claims. [ECF No. 292 in Case No. 1:19-CV-160]. Thereafter, in pursuit of the spoliation claim, Plaintiff three subpoenas duces tecum to the following: (1) JND Legal Administration ("JND"), (2) Mr. Ben Sexton ("Sexton"), a principal of JND, and (3) Ms. Dana Olson ("Olson"), an employee of JND. Notably, JND is a third-party vendor assisting Under Armour's in-house legal department and its outside counsel with certain e-discovery in the underlying civil matter. JND is based in the State of Washington. JND has offices in Minnesota, which is the state in which Sexton and Olson reside and work.

Plaintiff served subpoenas on, respectively, JND and Sexton seeking identical information, namely:

1. Documents related to presentations at Relativity Fest 2019 and 2020; Relativity Fest is an annual conference concerning e-discovery management and practices, apparently derived from an e-discovery management platform called "Relativity." Plaintiff alleges (and Under Armour disputes) that an Under Armour employee at the company's in-house legal department, Nicole "Niki" Finck ("Finck") made statements during a presentation at Relativity Fest 2019 about (a) problems with a prior e-discovery platform which Under Armour utilized, and (b) a practice at Under Armour to encourage employees to delete text messages.
2. All communications with any other person concerning comments made at panel discussion at Relativity Fest 2019 and 2020.
3. All communications with co-presenter(s) for Relativity Fest 2019 and 2020.
4. Any recordings of presentations at Relativity Fest 2019 and 2020.

[See ECF Nos. 3-11, 3-13].

By the subpoena duces tecum of Olson, Plaintiff seeks:

1. All communications Olson had with any other person regarding comments by Finck made during Finck's panel discussion at Relativity Fest 2019
2. All communications Olson had with Sexton concerning Finck's comments at Relativity Fest 2019
3. All communications Olson had with any other person concerning work she performed which formed the basis for her Declaration. The Declaration is a statement by Olson concerning her efforts to image text messages on an iPhone issued by Under Armour to Defendant Brian Boucher ("Boucher") during his employment by Under Armour. The Declaration was filed in the underlying civil action. [ECF No. 230 in Civil Action No. 1:19-CV-160].
4. Invoice to Under Armour reflecting the work performed as noted in the Declaration.
5. Copy of work product prepared in review of laptop, iPhone, or any other device as noted in the Declaration.
6. Olson's resume/CV
7. Any documents concerning Under Armour-issued laptops, iPad, iPhone, or other device as to either Boucher or Plaintiff.
8. Documents forming basis of Olson's Declaration.
9. All communications with anyone at Planet Data Solutions ("Planet Data") regarding Planet Data's work as to the iPhone, laptop, iPad, or other device issued to Plaintiff by Under Armour. Planet Data is a third party vendor managing digital forensic data and processes.
10. Any Cellebrite Physical Analyzer reports for any of Boucher's electronic devices. Cellebrite Physical Analyzer reports are summaries of data recovered from electronic devices and platforms.
11. Any reports or other work product created by Planet Data regarding Boucher's or Plaintiff's devices.

[See ECF No. 3-16].

In its pending motion to quash, Under Armour objects to these discovery requests as necessarily encompassing material and information protected by the attorney-client privilege and/or the work product doctrine. Plaintiff, on the other hand, argues that the crime-fraud exception applies here such that she should be able to obtain information which otherwise is privileged and confidential, and that in any event, as to work product, she should be able to obtain it because she has shown "substantial need."

At the hearing before the undersigned on June 30, 2021, the Court directed Under Armour's counsel to provide certain materials for in camera review. The undersigned received these materials on July 2, 2021 and reviewed them. The materials consist of materials which JND nevertheless earlier provided to Plaintiff in response to Plaintiff's subpoenas.[1]

## II. ISSUES, ANALYSIS, AND DISPOSITION

The undersigned addresses, in turn, the following issues: (1) application of the attorney-client privilege and the work product doctrine, (2) whether the crime-fraud exception applies to compel disclosure of otherwise privileged and confidential information, and (3) whether there is "substantial need" otherwise compelling disclosure of work product.

### A. Pertinent Law and Standards

Under the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any <u>nonprivileged</u> matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Significantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." <u>Id</u>.

Certainly, where privileged information is sought, discovery is not so readily had. Much of the resolution here turns on the application of the attorney-client privilege and work product doctrine. The undersigned recognizes that, in civil actions such as this one where the Court's

---

[1] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. These materials are not confidential, and appear to consist of materials exchanged between the parties, but nonetheless are restricted on the CM/ECF system out of an abundance of caution. They were provided as a single .pdf document, with chambers staff adding, as the first page, a printout of an email of transmission of the materials to chambers staff. [ECF No. 37].

jurisdiction is based upon the parties' diversity of citizenship, the federal common law governs the applicability of the work product doctrine, while state law governs the applicability of the attorney-client privilege. Nicholas v. Bituminous Cas. Corp., 235 F.R.D. 325, 329 n. 2 (N.D.W.V. 2006).

As for the attorney-client privilege, the Supreme Court of the United States has explained:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (citation omitted). Moreover, under West Virginia caselaw:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential.

State ex rel. U.S. Fid. & Guar. Co. v. Canady, 194 W. Va. 431, 442, 460 S.E.2d 677, 688 (1995) (quoting Syl. Pt. 2, State v. Burton, 163 W. Va. 40, 254 S.E.2 129 (1979)). Pertinent to the instant matter, when an attorney rendering legal services directs confidential communications to other parties in aid of rendering such services, such as that of Under Armour's counsel to JND here, the attorney-client privilege operates to protect such communications. "[T]he privilege extends to protect communication between the attorney and the agents, superiors, or attorneys in joint representation." State ex rel. Doe v. Troisi, 194 W. Va. 28, 36 (1995).

Similarly, the work product doctrine of course is long embedded in our jurisprudence. "[W]hile the protection of opinion work product is not absolute, only extraordinary circumstances requiring disclosure permit piercing the work product doctrine. We acknowledge that the

opinion work product rule should be jealously guarded . . ." In re Doe, 662 F.2d 1073, 1079 (4th Cir. 1981).

Finally, as an aside, when the instant matter was pending in the United States District Court for the District of Minnesota, the parties briefed the issues. In so doing, the parties argued as to whether Under Armour should have sought relief there under Rule 26 or Rule 45 of the Federal Rules of Civil Procedure, and whether it should have been sought in this Court or in the District of Minnesota. As the subpoenas are directed at JND and its staff, nonparties in the underlying litigation, Plaintiff argued about the appropriate mechanism for Under Armour to object to disclosure of information in which it had an interest. Under Fed. R. Civ. P. 45(d)(3)(A)(ii), relief is to be sought in "the court for the district where compliance is required," i.e. the District of Minnesota, where JND's staff are located. Under Fed. R. Civ. P. 26(c)(1), relief may be sought "in the court where the action is pending," i.e. the Northern District of West Virginia. It appears that under either rule, the standard for determining what is discoverable is identical. But more importantly, the parties did not object to transfer of the matter to this Court. [See ECF Nos. 16 and 22.] As such, the question is moot and requires no further discussion.

**B. Applicability of Attorney-Client Privilege and Work Product Doctrine,**

To recap, by the subpoenas duces tecum, Plaintiff seeks from JND and Olson discrete categories of information. Those categories are: (1) as to JND, documents related to Relativity Fest, and (2) as to Olson, communications and documents about Finck's panel discussion at Relativity Fest, documents about Olson's Declaration, and documents about certain electronic devices issued by Under Armour.

At the hearing before the undersigned on June 30, 2021, Under Armour's counsel indicated that Plaintiff has been provided responsive materials pertaining to Relativity Fest 2019 which

6

Under Armour considers to be non-privileged. Yet, Under Armour's counsel was clear that Under Armour is withholding other materials which it asserts are privileged and/or confidential. And Plaintiff's counsel indicated that Plaintiff intends to seek information regardless of the assertion of privilege. Plaintiff does not contest that privilege applies here in the normal course. Thus, the issue to resolve is whether there are any exceptions to privilege in this context to compel disclosure of the remainder of the documents sought.[2]

As a related matter, at the June 30, 2021 hearing, Under Armour's counsel distinguished between information and materials generated <u>prior to</u> February 10, 2021, when Plaintiff designated Finck as a potential witness, and those generated <u>after</u> that date. By this Order, the undersigned analyzes only argument about information and materials generated <u>prior</u> to that date. Privileged information generated on or after that date clearly would be of a different nature, as Plaintiff then named Finck as a potential witness. To the extent which Plaintiff seeks privileged and/or confidential information here generated on or after February 10, 2021, the undersigned **FINDS** that Under Armour need not produce it.

### B. Crime-Fraud Exception

Plaintiff claims that the crime-fraud exception trumps the relevant attorney-client and work product shields in this context. However, courts are not to so cavalierly cast aside these protections.

As the Fourth Circuit has explained, "[b]oth the attorney-client and work product privileges may be lost . . . when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004, 401 F.3d 247,

---

[2] It does not appear that Plaintiff seeks to take Olson's deposition, but rather seeks only production of documents from Olson. Thus, the undersigned does not analyze any proposed areas of inquiry of a deposition of Olson.

251 (4th Cir. 2005). "The party asserting the crime-fraud exception . . . must make a prima facie showing that the privileged communications fall within the exception." Id. More specifically:

> [W]e have held that the party invoking the crime-fraud exception must make a prima facie showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud. Prong one of this test is satisfied by a prima facie showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed. Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity.

Id. (citations omitted).

Importantly here, JND has served as an arm of Under Armour's counsel. As such, there is no argument that the attorney-client privilege and work product doctrine operate to shield, in the normal course, communications and information in which JND is involved.

Moreover, it has become clear to the undersigned that Plaintiff has failed to show how any defendant here involved their legal counsel (or party working with counsel, such as JND here) in some kind of scheme to defraud. As such, Plaintiff has not made a prima facie showing to invoke the crime-fraud exception. The most to which Plaintiff has pointed is deletion of text messages by Boucher. Nowhere in the record does Plaintiff make any kind of showing that Boucher deleted the text messages with involvement of counsel or in any way utilized a relationship with legal counsel (either in-house or outside counsel) to perpetuate some kind of fraud. In fact, Plaintiff has not shown that the deletions occurred with involvement of anyone else at all. And Plaintiff has not even shown that deleted information was germane to Plaintiff or had any bearing on the substance of the underlying matter.

There simply is not sufficient demonstration by Plaintiff that a violation was ongoing or about to be committed, let alone a demonstration of a close relationship between any attorney-

client contact and the spoliation activity alleged. Courts are reluctant, for good reason, to find that the crime-fraud exception applies, given the sanctity of the privileges at issue. Plaintiff's allegations or suspicions do not carry the day in this analysis; there must be more specificity.

The undersigned **FINDS** that the crime-fraud exception does not apply here. Accordingly, to the extent which Under Armour seeks a protective order to shield from discovery information otherwise protected by the attorney-client privilege and work product doctrine, its motion is **GRANTED**.

### C. Plaintiff's Claim of "Substantial Need" for Work Product

As to all of the materials sought here which are work product materials, Plaintiff claims that she is entitled to them because of "substantial need." Plaintiff bases this argument on the provision that documents and tangible things "prepared in anticipation of litigation or for trial by or for another party (including the other party's attorney . . .)" are not usually discoverable unless "(i) they are otherwise discoverable under Rule 26(b)(1) and (ii) the party shows that is has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). In this regard, the Fourth Circuit has explained that there are two kinds of work product: (1) that which is "absolutely" immune, being "the pure work product of an attorney insofar as it involves mental impressions, conclusions, opinions, or legal theories ... concerning the litigation" and which "is immune to the same extent as an attorney-client communication" and (2) that which is "qualifiedly immune, being "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.'" Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992) (quotations and citations omitted).

"[O]ur adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client." Id. at 983. Here, Plaintiff has left virtually no other stone unturned in search of information to support her spoliation claims. The breadth of discovery undertaken here, the corresponding litigation of numerous discovery disputes, and the resources brought to bear in the process, have been exhaustive but to date have yielded little. Plaintiff has litigated discovery disputes in at least two other jurisdictions besides this one, sought information from a number of third parties, conducted forensic examinations of digital devices, and deposed an array of individuals. Thus, by seeking her opponent's work product, it is unclear what nugget of information Plaintiff believes she will turn up which is so pivotal to her claims. It is unclear what possibly could be unavailable to Plaintiff that is so necessary to set aside work product protections. In short, Plaintiff fails to demonstrate a compelling reason to pierce the work product protection.

Thus, the undersigned **FINDS** that Plaintiff may <u>not</u> obtain work product based upon substantial need. Accordingly, to the extent which Under Armour's motion seeks a protective order in spite of Plaintiff claiming "substantial need" of work product, Under Armour's motion is **GRANTED**.

## III. CONCLUSION

Based on the foregoing, and as set forth more particularly herein, Under Armour's motion [ECF No. 1] is hereby **GRANTED**. It is all so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: July 12, 2021**

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE